OPINION OF THE COURT
Joseph D. Mintz, J.
Plaintiffs move for entry of judgment on a verdict in their favor following a jury trial before Hon. Henry G. Gossel. The parties agree that following verdict, but before entry of judgment, the verdict must be reduced to present value in accordance with the provisions of CPLR article 50-A. The parties have further agreed that instead of the necessity for a hearing concerning reductions due to collateral source payments or for a hearing under CPLR 5031 (e) to determine the discount rate in effect at the time of the award, and instead of the necessity for the court to make calculations in accordance with CPLR 5031 (e), they have performed all calculations to their mutual satisfaction. The only issues remaining for the court to determine are (1) the manner in which attorneys’ fees are to be allocated to the various components of past and future damages; and (2) the application of postjudgment interest under CPLR 5003.
Attorneys’ fees are calculated in accordance with Judiciary Law § 474-a, which was amended to its present form as part of the same legislative package which produced CPLR article 50-A (L 1985, ch 294). Section 474-a requires that after reduction of all appropriate disbursements, attorneys’ fees would be calculated in accordance with a sliding scale: 30% of the first $250,000, 25% of the next $250,000, 20% of the next $500,000, 15% of the next $250,000, and 10% of any amount over $1,250,000. Attorneys for plaintiffs have reached an agreement with the plaintiff that the application of the statutory formula would be accomplished by applying the percentages first to the future damages which have been reduced to present value, and then to lump-sum future damages and past damages. The agreement between plaintiffs and their attorneys was for two *680 reasons, first, that the full amount of allowable disbursements has not yet been computed; this allocation method will permit the later determination of this amount before applying 10% as the calculation of attorneys’ fees on the lump-sum award. Second, this method of calculation is more beneficial to plaintiff as it allows for a greater amount of lump-sum damages to remain after the deduction of attorneys’ fees, i.e., the greater proportion of attorneys’ fees will come from the present value of the future annuity policy, rather than from the lump-sum payments due on judgment.
It should be noted from the outset that plaintiffs’ proposed calculation of attorneys’ fees does not affect, in any way, the calculation of present value to be entered in the judgment. It simply allocates less after fee dollars to that portion of the present value allocable to the future annuity policy. However, while the total present value is unaffected, defendants argue that their actual cost is affected, since they are often able to purchase annuities at a cost less than the present value allocated to that annuity. By allocating a smaller proportion to the present value of the annuity, that limits the amount of cost savings the defendants can enjoy upon the purchase of the annuity policy. Their justification for raising this issue is based upon their perception of the purpose of the enactment of articles 50-A and 50-B, the savings to defendants’ insurers. They rely upon that justification and also upon the method of allocation of attorneys’ fees employed by Justice Gammerman in Andrialis v Snyder (159 Misc 2d 419 [Sup Ct, NY County 1993]).
In addressing this issue, it is significant to note that the enactment of section 474-a carved out an exception to the general rule in section 474 which provides that compensation to an attorney is governed by agreement between the attorney and his/her client. Under elementary statutory construction principles, to the extent that the exception created in section 474-a does not apply, the general rule of section 474 will control.
Although section 474-a and CPLR article 50-A were enacted together, neither section makes any reference to the other. There is nothing explicit in the provisions of CPLR 5031 concerning attorneys’ fees which set forth any methodology for the computation of contingent fees in malpractice actions in accordance with the sliding scale. Also, although section 474-a was amended later in 1985 to include dental and podiatric malpractice actions, no reference to section 5031 was *681 added. Thus, there is nothing in the statutes themselves which compels any sort of allocation of the attorneys’ fees among past, lump-sum future, or annuity damages.
At the time Andrialis (supra) was decided, the Court of Appeals had not yet rendered its decision in Rohring v City of Niagara Falls (84 NY2d 60 [1994]). Prior to the decision in Rohring, trial courts uniformly read the statutory language concerning the computation of attorneys’ fees literally. Under the construction employed, attorneys’ fees, computed after reduction to present value, were subtracted in a pro rata manner from verdict awards. Then a second computation was performed reducing the remaining amounts to present value. (See, e.g., Ursini v Sussman, 143 Misc 2d 727 [Sup Ct, NY County 1989]; Peterson v Zuercher, 152 Misc 2d 684 [Sup Ct, Erie County 1992].) In Rohring, the Court of Appeals found such methodology contrary to the intent of the statute and contrary to common actuarial methods. The court found the language of the statute ambiguous, and required the deduction of attorneys’ fees to be made from the calculated present value. Thus, at the time that Andrialis was decided, the allocation of the sliding scale for contingent fees in malpractice actions would impact the present value calculated after reduction of attorneys’ fees. If the 30% were applied first to past and lump-sum benefits, the present value of the entire package would be less than if the 30% were applied first to annuity damages set out in the verdict. Justice Gammerman concluded that fairness dictated that allocation of the attorneys’ fees to lump-sum damages and to annuity damages be done on a pro rata basis.
In contrast, now after Rohring (supra), the allocation of attorneys’ fees does not affect the present value of the total package in any way. The fairness issues addressed by Andrialis (supra) insofar as they pertain to the present value are not before the court. Instead, the defendant asks that the court consider these issues with respect to the manner that the allocation of attorneys’ fees will affect the actual cost of the annuity.
This court views such considerations as improper. The language of article 50-A focuses only on present value. No mention of cost to the defendant is mentioned anywhere in the statutory language. The application of articles 50-A and 50-B are complicated enough without adding considerations of actual cost to considerations of present value. Furthermore, the Legislature had several occasions to provide for specific *682 methods of allocation of fees in medical malpractice actions. Allocation language could have been contained in section 5031 or in section 474-a at the time of its 1985 amendment, or later amendments. The lack of any such language must be viewed as an indication that the Legislature meant the general provisions of Judiciary Law § 474 to apply to allocation issues. Plaintiffs’ attorneys have sufficiently demonstrated that their method of allocation is in accordance with their agreement with plaintiffs. There is no adequate reason to deviate from this agreement. Thus, the attorneys’ fees provisions in the judgment are proper.
The parties also disagree on the application of CPLR 5003, pertaining to postjudgment interest, to the future annuity damages. This issue is of significant interest to the parties, as it is clear that a lengthy appeal process will delay the payments of the annuity under the judgment. Plaintiff claims that section 5003 should be applied to the present value of the annuity until the first payment of the annuity is made. Defendant claims that the annuity should be structured to allow the first annuity payment to be credited to plaintiff one year after judgment, and that at such time as any of the past due payments are paid, interest computed only on those payments. Defendant urges that its proposal of how the annuity payments should be made is better for plaintiff because it gets plaintiff the annuity payments in accordance with the years of need as determined by the jury verdict. Interestingly, defendant does not state that the annuity will be purchased at judgment, simply holding back those early year annuity payments; it seems that defendant’s intent is to purchase the annuity if and when the judgment is affirmed by the appellate courts.
Under these circumstances, defendants will continue to have the use of the funds until such time as the annuity contract is purchased and the first annuity payment made. Whether the defendants purchase the annuity contract to make the payments in futuro, or with back payments to cover the annuity years missed, will be left up to defendants’ discretion, any agreement with the plaintiff, or any determination by the appellate court. It is defendants’ use of the money in the interim which forms the basis of interest. (Love v State of New York, 78 NY2d 540, 544 [1991].) Since defendant’s have use of the entire amount of the present value, the entire amount is subject to postjudgment interest. This court sees no reason to distinguish the application of postjudgment *683 interest from the application of preverdict interest under CPLR 5001 and prejudgment interest under CPLR 5002 (see, Johnston v Joyce, 192 AD2d 1124 [4th Dept 1993]; Rohring v City of Niagara Falls, supra). Furthermore, the decision in Rohring did not impact the Fourth Department’s decision in Johnston (supra), which covered interest under both CPLR 5002 and 5003. The questions raised by defendants here were properly before the court in both cases; failure to argue the issues at time of entry of judgment did not prevent the courts from addressing them at the appellate level. The inclusion now of defendants’ arguments regarding the time of annuity payments does not change the previous appellate determinations.
For these reasons, the judgment which is attached to plaintiffs’ reply affirmation as exhibit A is entirely proper, and the original of that order will be signed upon submission.